*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 20-CV-0312

JENNIFER BAKER, APPELLANT,

V.

CHRISSY CONDOMINIUM ASSOCIATION, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-1544-19)

(Hon. Jason Park, Trial Judge)

(Submitted March 31, 2021                    Decided May 27, 2021)

*Michael C. Forster* was on the brief for appellant.

*Lacey Ullman Conn* was on the brief for appellee.

Before THOMPSON and DEAHL, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: Jennifer Baker, the owner of a condominium unit at 5210 F Street SE, and a member of the Chrissy Condominium Association (the "Association"), appeals the trial court's order granting the Association's motion for summary judgment and dismissing her complaint, in which she alleged a contract

claim, a breach of fiduciary duty claim, and various tort claims against the Association. She alleges, more specifically, that the trial court erred in ruling that a liability waiver provision in the Association's Bylaws precluded any recovery for direct and consequential damages resulting from a leak in the foundation wall that, she says, was the Association's responsibility to maintain. We agree, in part, with appellant Baker, reverse the judgment of the trial court, and remand the case for further proceedings.

## I.       Facts and Proceedings

According to appellant Baker's complaint, each owner of a Chrissy condominium unit, which includes appellant Baker, is a member of the Association. Appellant purchased a unit on June 25, 2013 ("the Premises"), and in March 2018, she began renting the Premises. Two months later, in May 2018, the Premises began to experience a leak which became so severe that appellant was forced to offer her tenant free rent from June 2018 until the tenant left five months later in November. Appellant informed the Association of the leak on July 24, 2018, by sharing photographs of the damage to her unit with the President of the Association, Wanda Simmons. The Association took no action in response.

Frustrated with the Association's inaction, appellant independently obtained four waterproofing estimates and a structural evaluation from a licensed engineer in November of 2018. The structural evaluation revealed that "there are grading issues across the rear foundation wall that cause water to flow towards the wall and window wells." The engineer who conducted the evaluation recommended waterproofing the rear foundation wall, providing drainage in the two window wells, and installing a new window at the right front of the building. The engineer estimated the repairs would cost anywhere from $14,000.00 to $20,500.00. Appellant shared the evaluation with Ms. Simmons, who, two weeks later, passed it on to the management company. On December 31, 2018, Ms. Simmons told appellant that the management company had advised the Association to complete the repairs, but that the Association had decided it would not "initiate the repairs" because they "would empty our reserve account."

The damage to the Premises is such that appellant claims she cannot rent her unit, sell it, or occupy it herself. As such, the Premises have remained vacant since her tenant left in November 2018. Because the foundation wall where the leak is originating is a "common element" of the Association, appellant claims that she is unable to resolve the issue because the foundation is in the "domain" of, and thus the "responsibility" of, the Association.

On March 11, 2019, appellant filed a complaint against the Association alleging breach of contract, trespass, negligence, nuisance, and breach of fiduciary duty for its failure to maintain the foundation wall and repair the resulting damage to her unit. Appellant also specified "counts" for injunctive relief, diminution of value of the Premises, and pain and suffering. In particular, appellant requested injunctive relief requiring the Association to repair the foundation wall, as well as damages in the amount of $100,000.00 and attorneys' fees.

On May 1, 2019, the Association filed a motion to dismiss. On June 14, 2019, the trial court partially granted the motion, dismissing appellant's "counts" for injunctive relief, diminution of value of the Premises, and pain and suffering, but allowing her claims for breach of contract, trespass, negligence, nuisance, and breach of fiduciary duty to go forward.[1]

After discovery, the Association filed a motion for summary judgment on November 25, 2019. It argued that provision 7.11 of the Association's Bylaws, governing the respective rights and duties of the unit owners and the Association,

---

[1] Appellant Baker does not contest this order in her brief. *See Matthews v. United States*, 13 A.3d 1181, 1190 n.8 (D.C. 2011) (considering an argument waived when issue was not adequately briefed on appeal). It is unclear whether the trial court dismissed these counts because they instead are remedies, not claims, or for some other reason.

acted as a complete defense against appellant's claims. Provision 7.11, in relevant part, reads as follows:

> The Association shall not be liable for any failure of water supply or other services to be obtained by the Association or paid for as a Common Expense *or for injury or damage to person or property caused by the elements or resulting from electricity, water, snow or ice which may leak or flow from any portion of the Common Elements or from any wire, pipe, drain,[] conduit, appliance or equipment* (emphasis added).

On December 9, 2019, in filing her opposition to the motion for summary judgment, appellant argued that the Association's reliance on provision 7.11 of the Bylaws was misplaced. She maintained that the Association had ignored other provisions of the Bylaws that made it clear the foundation wall was a "Common Element" that the Association was responsible for maintaining. Appellant asserted that, even if provision 7.11 could be read to limit relief requested for the water damage itself, the Bylaws by "no means limit[] the damages for the Association's delays in addressing the issue, which are negligent and have cost Plaintiff thousands of dollars in rental income and caused her immense stress and pain and suffering." Further, appellant continued, "[b]y [the Association's] logic, [Baker] has no remedy . . . and must sit on her hands and hope that [the Association] performs its duty under the Bylaws." Appellant characterized the Association's

failure to repair the Common Element as "a breach of contract that entitles Plaintiff to all the reasonable and foreseeable damages flowing from that breach, most notably, loss of rental income. The Bylaws do[] not prevent Plaintiff from seeking that remedy."

On February 25, 2020, the trial court, relying on this court's *D'Ambrosio* decision,[2] granted the Association's motion for summary judgment and dismissed appellant's remaining claims, concluding:

> In this matter, the liability disclaimer contained in Paragraph 7.11 of the Bylaws is clear and unambiguously precludes the Association from being held liable for water damage resulting from water flowing from common elements, like the rear foundation wall. The provisions of the Bylaws requiring the Association to provide for the upkeep of the common elements do not modify that unambiguous language.

Appellant's timely notice of appeal followed.

---

[2] *D'Ambrosio v. Colonnade Council of Unit Owners*, 717 A.2d 356 (D.C. 1998).

## II.     Legal Standard

This court reviews a grant of summary judgment de novo, applying the same standard as the trial court does in considering the motion for summary judgment.[3] A party is entitled to summary judgment if, when the facts are viewed "in the light most favorable to the non-moving party[,] . . . there [are] no genuine issue[s] of material fact and [ ] the moving party is entitled to judgment as a matter of law."[4] "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law."[5] "[A]n issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6] On appeal, this court is required to "conduct an independent review of the record . . . [to] determine whether any relevant factual issues exist by examining and taking into account the pleadings, depositions, and admissions along with any affidavits on file, construing

---

[3] *See District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009); *see also Aziken v. District of Columbia*, 194 A.3d 31, 34 (D.C. 2018).

[4] Super. Ct. Civ. R. 56(c); *Hosp. Temps Corp. v. District of Columbia*, 926 A.2d 131, 134 (D.C. 2007).

[5] *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Id*. (quoting *Anderson*, 477 U.S. at 248).

such material in the light most favorable to the party opposing the motion."[7] Further, "[t]he proper interpretation of a contract . . . is a legal question, which this court reviews de novo."[8]

### III.    Analysis

**A. Water Damage**

In *D'Ambrosio*, on which the trial court relied so heavily, the plaintiff sued the property management firm, as well as the Colonnade Council of Unit Owners, after a frozen pipe burst behind the wall of his condominium unit, causing damage.[9]  The Bylaws governing the relationship between the plaintiff and the Colonnade Council stated, in relevant part:

> The Colonnade Council *shall not be liable for any failure of water supply or other services* to be obtained by the

---

[7] *District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d at 1155 (quoting *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C. 1991)).

[8] *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013) (quoting *Tillery v. District of Columbia Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006)).

[9] *D'Ambrosio*, 717 A.2d at 357.

> council or paid out of the common expense funds, or for
> *injury or damage to person or property caused by the
> elements or from any pipe, drain, conduit, appliance, or
> equipment.*[10]

The plaintiff in *D'Ambrosio* also referenced "other sections of the Bylaws, which place[d] responsibility with the condominium owner for maintenance of plumbing fixtures and other appliances within that owner's unit," while leaving "responsibility for maintaining 'general common elements' including pipes, with the Colonnade Council."[11] We determined that the latter provision, however, did not negate the "unambiguous meaning of the limitation on liability clause."[12] Specifically:

> The provisions in the Bylaws allocating responsibility as between the unit owners, with respect to pipes in their units, and the Colonnade Council, with respect to pipes in common areas outside individual units, do not in any way modify or limit the provision in the Bylaws that the Colonnade Council is not responsible for damages from any pipe.[13]

---

[10] *Id.* (italics in original).

[11] *Id.* at 358.

[12] *Id.* at 359.

[13] *Id.*

In short, the Council of unit owners was not responsible for damage from "any pipe" even when attributable to "pipes in common areas outside individual units," for which it had the responsibility to maintain.

Although appellant attempts to distinguish *D'Ambrosio* in seeking recovery for water damage to her unit, she all but concedes the futility of that uphill climb; limited liability provision (7.11) in the Association Bylaws is functionally identical to the comparable provision in *D'Ambrosio*, except for the additional causal elements (referenced in bold) added by the Association.

> The Association shall not be liable for any failure of water supply or other services to be obtained by the council or paid out of the common expense funds, or for injury or damage to person or property caused by the elements or from **electricity, water, snow or ice which may leak or flow from any portion of the Common Elements or from** any **wire,** pipe, drain, conduit, appliance, or equipment.

Bylaw provision 7.11, therefore, essentially interpreted in *D'Ambrosio*, leaves no room for an argument that appellant can recover for water damage to her unit that generated her complaint to the Association, whether attributable to a "pipe, drain,

conduit, appliance, or equipment" or to a "Common Element," including the foundation wall.[14]

## B. Consequential Damage

Appellant's complaint, however, is not limited to damage from the water that initially flowed into her unit. It also includes claims for breach of contract, negligence, breach of fiduciary duty, trespass, and nuisance, all of which survived the Association's motion to dismiss.[15] Relying on these theories, she cites the Association's responsibility under Bylaw 7.7.1 to maintain, repair, and replace the Common Elements[16] (including the foundation wall).[17] She then claims that the Association's failure (after timely notice) to restore the defective foundation wall (allegedly the direct cause of the water damage) was an actionable breach of duty

---

[14] The Parties do not dispute that the foundation wall is a "Common Element."

[15] See text accompanying *supra* note 1.

[16] Bylaw provision 7.7.1 provides in relevant part: "The Association, acting through the Board of Directors, shall be responsible for the maintenance, repair and replacement of the following: . . . The Common Elements, including the General and Limited Common Elements, whether located inside or outside of the Units[.]"

[17] See *supra* note 14.

extending "for more than 10 months," causing "sustained" financial and emotional damage. And that breach, appellant claims, entitles her (if not for the excludable water damage) to damages for injuries best characterized as consequential, "continuous," and "ongoing."[18] These damages are reflected, for example, in the "substantially" diminished value of her unit, as evidenced "by the financial strain of losing rental income but still being responsible for the mortgage and HOA [Home Owner Association] fees." It follows, she maintains, that to the extent Bylaw 7.11 limits the Association's liability, it does so only as to her claim that water leaking from the foundation wall damaged her unit; it does not limit the Association's liability for breach of duty to maintain and repair the "Common Elements" of the Chrissy Condominium.

For comparison, we return to *D'Ambrosio*. In precluding liability for damage from the pipe that "froze and burst" behind a wall in D'Ambrosio's unit, we rejected D'Ambrosio's argument that "the limitation on liability clause could not control in a situation of damage caused by common pipes beyond the reach of a

---

[18] *See* Black's Law Dictionary, *Consequential Damage*, https://thelawdictionary.org/consequential-damage/ https://perma.cc/T6FT-JJZC (last visted May, 7, 2021) (defining "consequential damage" as "damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act.").

unit owner."[19]   Implicitly, it seems, D'Ambrosio, was positing that the defect causing the pipe to burst in his unit occurred outside his unit; that under the bylaws the Colonnade Council had "responsibility for maintaining 'general common elements,' including pipes";[20] and thus that the Colonnade Council had legal liability for his water damage via breach of contract (the bylaws) and/or negligence (failure to maintain).   As previously stated, we rejected this argument, observing that the Colonnade Council's bylaw responsibility to maintain pipes outside an owner's unit did "not in any way modify or limit the provision in the Bylaws that the Colonnade Council is not responsible for damages from 'any pipe',"[21] wherever located.[22]

We agree with appellant that *D'Ambrosio* is legally distinguishable from appellant's situation.   In *D'Ambrosio,* the unit owner asked the court to interpret the Colonnade Council's limited liability for property damage in a way that would

---

[19] *D'Ambrosio*, 717 A.2d at 358-59.

[20] *Id.* at 358.

[21] *Id.* at 359.

[22] D'Ambrosio also had alleged a fraud count, which the trial court dismissed.  We reversed and remanded that count for further proceedings. *Id.* at 361-62.

permit recovery for the one claim he was making: water damage in his unit. In her much broader complaint, appellant Baker includes claims for economic injury related to, but separate from, the initial water damage to her unit. She alleges breach of contract, tort claims of negligence, nuisance, and trespass, and breach of fiduciary duty claims, all of which have allegedly diminished the value of her unit and resulted in substantial loss of rental income and sale potential, as well as losses attributable to her obligations to continue mortgage payments and the Association's home owner fees.[23]

Accordingly, we must examine more thoroughly the Association's responsibility for maintaining and repairing the foundation wall,[24] its alleged failure to do so, the damage allegedly caused by that failure, and the relevance, if any, of the Association's damage-limiting Bylaw 7.11. In doing so, we do not distinguish among the legal theories remaining available to appellant; we are satisfied that her allegations reasonably relate to one or more of them.

---

[23] Verified Complaint ¶¶ 39, 46, 54, 65, 70. Appellant also claims damages for pain and suffering. *Id*. at 71. Although the trial court struck the "counts" in appellant's complaint for "diminution of property value" and "pain and suffering," the court may have done so because these are remedies, not claims. Thus, at this stage of the proceeding we cannot conclude that a claim leading to damages with those descriptions is foreclosed.

[24] See *supra* notes 16 & 17 and accompanying text.

As appellant correctly points out, our decision in *D'Ambrosio* partially relied on the fact that — in contrast with appellant's situation here — the plaintiff had "failed to submit to the trial court any evidence sufficient to create a material issue regarding [defendant's] responsibility for the pipe which froze and burst, in the face of the resident manager's affidavit denying that [defendant] was so responsible."[25]  In the present case, to the contrary, appellant introduced as evidence the fundamental document that set up the material issues: a copy of the Bylaws, which make clear that the Association is responsible for maintaining and repairing all Common Elements.  Because the Association does not dispute that the foundation wall is a Common Element,[26] there is no question that it has responsibility under Bylaw 7.7.1 to "maintain[], repair, and [if necessary] replace[]" the foundation wall.[27]  The Association does not contest this responsibility, nor can it.

In addition to its "maintenance, repair and replacement" obligations under Bylaw 7.7.1, the Association's Board of Directors has a duty under Bylaw 5.1(3) to

---

[25] *D'Ambrosio*, 717 A.2d at 360.

[26] See *supra* note 14.

[27] See *supra* note 16.

"[p]rovide for the operation, care, upkeep, maintenance and surveillance of the Common Elements." Relatedly, Bylaw 10.8.1 states: "In the event of damage to or destruction of all or any of the . . . Common Elements as a result of fire *or other casualty*, the Board of Directors shall . . . arrange for and supervise the *prompt* repair and restoration of the Building." (emphasis added). And, Bylaw provisions 10.1-10.2 require the Board to "obtain and maintain casualty and liability insurance . . . [that] shall insure the Building . . . and other Condominium Property"). Finally, Bylaw 10.8.2(b) authorizes special assessments to defray such costs "[i]f the proceeds of insurance maintained by the Condominium are not sufficient."[28]

Our decision in *D'Ambrosio* also relied, in part, on the plaintiff's failure to specify or produce evidence of a negligent act or breach on the part of the defendant in relation to the pipes that burst.[29] In the present case, however, the record is full of instances where appellant allegedly informed the Association of

---

[28] The relevance of these provisions, which make clear the Association's duty to repair the foundation wall, is illustrated by the Association's December 31, 2018, response to appellant Baker's December 26, 2018, email, in which Ms. Simmons indicates that the Board is considering a "special assessment" of homeowners to help defray the costs of repairing the foundation wall.

[29] *See D'Ambrosio*, 717 A.2d at 360.

the problem with the foundation wall,[30] even taking on the expense of obtaining an evaluation from an engineer to detail the issue.[31] But the Association apparently failed to take the necessary steps to repair the wall, allegedly resulting in more damage to appellant's unit.

The Association argues, nonetheless, that appellant is merely "[r]eclassifying her damages as coming from a delayed response time" to repair the foundation wall; "every single one of Baker's claimed damages stem from water flowing or leaking from the foundation, a situation expressly covered by the limitation of liability clause." As indicated above, however, appellant's contract, tort, and breach of fiduciary duty claims are not reclassifications of her water damage claim; they target injuries — ongoing economic loss allegedly attributable

---

[30] *See* Ex. A of Appellant's Compl. (July 24, 2018 email to the Association explaining that the external foundation of the building is causing flooding to her property); Exs. B & C of Appellant's Compl. (November 26, 2018 email to the Association that attaches report of certified architectural engineer's report that concludes the rear foundation wall is the cause of the leak); Ex. D of Appellant's Compl. (December 10, 2018 email from Association indicating receipt of the report); Ex. E of Appellant's Compl. (December 31, 2018 email from Association indicating that the management company did advise the Association to take care of the repairs and it was determining how to do so without "exhausting" its accounts, but it would not immediately make the repairs because they would "empty" its reserve account.).

[31] Arguably an expense that was rightfully the Association's to incur. *See* Bylaw Provision 5.1(4).

to the Association's inaction — beyond the expense of cleanup from the initial water damage.[32]

There may well be a reasonable period between the initial, non-compensable water damage and the date when the Association would be obliged to commence repairs of the foundation wall, in order to avoid liability under the Bylaws (or otherwise) for compensable damages attributable to delay. But this would reflect damages later in time and separate from those barred under Bylaw 7.11, not a "reclassification" of the water damage as argued by the Association. To be clear, moreover, compensable delay damages presumably could include water damage, wholly apart from the water that generated appellant's claim but proximately caused by actionable delay.

Ultimately, the Association's argument that appellant cannot sue here under a contract, negligence, or similar theory is incompatible with its acknowledgement

---

[32] Appellant's complaint is explicit in seeking damages not only for the initial water damage, but for the Association's delay in repairing the wall. Indeed, paragraph twenty-six of appellant's complaint states: "[b]y the Association failing to act promptly to correct the issue, the Premises has sustained more damage than would it have, had the problem been corrected earlier."

of the Association's "duty to repair the Common Elements." As noted earlier,[33] Bylaw 7.7.1 states that "[t]he Association, acting through the Board of Directors, shall be responsible for the maintenance, repair and replacement of . . . [t]he Common Elements, including the General and Limited Common Elements, whether located inside or outside of the Units[.]" Because the Association has this legal duty, it will mean nothing — an untenable position — unless appellant is entitled to sue for appropriate relief when the Association breaches that duty. Indeed, the Association does not dispute that appellant can bring a "contract" action premised on its Bylaws, and it concedes that she is suing to enforce the Bylaws.[34] The Association therefore relies exclusively — and erroneously — on Bylaw 7.11 (the limited liability provision).

In sum, appellant has proffered evidence sufficient to create contested issues of material fact as to the Association's responsibility for maintaining and repairing the foundation wall, as well as its alleged breach and resulting damages from failing to do so. Summary judgment, therefore, should not have been granted.

---

[33] See *supra* note 16.

[34] *See Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 548 A. 2d 87, 91 (D.C. 1988) ("The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the Association and unit owners.").

While Bylaw 7.11 limits appellant's ability to seek recovery for property damage to the Premises caused by the initial water leaks from the foundation wall, neither that provision nor any other limits appellant's right to sue the Association to ensure compliance with its obligations under Bylaw 7.7.1.

*****

For the reasons elaborated above, we reverse the order of the trial court and remand the case for further proceedings.

*So ordered.*